(106 So. 455)

No. 25590.

**HENRY ROSE MERCANTILE & MFG. CO. v. STEARNS (MONTGOMERY WARD & CO., Interveners).**

(Nov. 30, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Landlord and tenant** ⬅246(3)—Merchandise on consignment held not transiently on premises, and therefore subject to provisional seizure.

Merchandise, placed with owner's consent in premises leased by another there to remain until sold by latter or by owner, are subject to lessor's privilege, under Civ. Code arts. 2705, 2706, 2707, and provisional seizure to satisfy same, and are not exempt, under article 2708, as only transiently or accidentally on premises.

2. **Landlord and tenant** ⬅246(4)—Word "undertenant" synonymous with word "underlessee."

"Undertenant" as used in Civ. Code, art. 2706, defining landlord's right of pledge on movable effects of lessee as including not only effects of principal lessee or tenant, but those of undertenant, is not used in its broad sense, but is synonymous with the word "underlessee."

3. **Landlord and tenant** ⬅246(4)—One paying storage for goods in warehouse is "sublessee," within statute.

One who pays storage for safe-keeping of his goods in a warehouse or other place is regarded as "sublessee," within Civ. Code, art. 2706, defining lessor's right of pledge.

4. **Landlord and tenant** ⬅248(1)—Statute. giving depositor of movables with lessee preference, held inapplicable; "deposit."

Where it was not intention of owners of merchandise that property placed in hands of lessee should be preserved by latter and returned to owner, and it was placed with lessee for purpose of sale, Civ. Code, art. 3260, giving owner preference on things deposited and found on leased premises superior to that of lessor, *held* inapplicable; "deposit" referred to in article 3260 being, by article 2926, defined as act of receiving property of another to be preserved and returned in kind.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Deposit.]

5. **Landlord and tenant** ⬅246(3)—Merchandise placed on leased premises held subject to lessor's privilege.

Where merchandise was consigned to lessee of premises for purpose of sale, it became subject to lessor's privilege, under Civ. Code, art. 2707; it being property of a third person on leased premises with consent of such person, and not being within exceptions provided by article 2708.

6. **Appeal and error** ⬅1152—Amendment to decree held unnecessary.

Where, in lessor's case against lessee, judgment against latter was amended by reducing rent to amount that had accrued when seizure was run, and lessor's claim for which intervener's property was held liable was only for rent accruing up to time of seizure, amendment to judgment, holding it liable for only such sum as had accrued at time of seizure, was unnecessary.

Appeal from First Judicial District Court, Parish of Caddo; F. X. Ransdell, Judge.

Action by the Henry Rose Mercantile & Manufacturing Company against J. B. Stearns, in which Montgomery Ward & Co.

intervened. Judgment for plaintiff, and intervener appeals. Affirmed.

Crain, Jackson & Johnston, of Shreveport, for appellant Montgomery Ward & Co.

Herndon & Herndon, of Shreveport, for appellee.

OVERTON, J. Plaintiff leased to defendant, who was doing business under the trade-name of the Stearns Wagon Company, certain premises in the city of Shreveport. Montgomery Ward & Company, the intervener herein, under the name of the Hummer Plow Works, entered into a contract with Stearns, in which it was agreed that the former would ship to the latter carload lots of implements, wagons, and other equipment handled by it; that Stearns would store the goods to be shipped in his place of business, in the city of Shreveport, and would display samples of them there to prospective purchasers and the public; that Stearns should have the right to sell any of the goods to be shipped at prices not less than those to be quoted by intervener from time to time; that he should settle, in cash, for the goods sold by him on the first of each month at the prices fixed by intervener, that, in addition, he should furnish intervener monthly with a list of all of its goods on hand at the time of making the statement; and that intervener, as well as Stearns, should have the right to sell any part of the goods so shipped. The contract did not contemplate that intervener should pay storage on the goods. It did contemplate, however, that Stearns, for his expense and trouble in handling the goods, should receive the difference between the prices fixed by intervener and those to be obtained by him for such of the goods as he might sell.

Intervener made shipments under the contract entered into by it. Stearns received the goods, paid the freight on them, and stored and displayed them in his place of business, which he had rented from plaintiff.

After the shipments were made, Stearns fell considerably in arrears with his rent, and in February, 1921, about 7 months after his contract with intervener had been entered into, owed his landlord, the plaintiff herein, something over $1,100. As a result of his failure to pay his rent, plaintiff brought suit against him for the rent then due and for that to mature, and caused to be provisionally seized all of the property found on the leased premises, including such of the goods as remained on hand that intervener had shipped.

Intervener then filed this intervention. In that pleading it claims ownership of the goods shipped by it, and seized under the writ of provisional seizure, and claims that these goods were only transiently on the leased premises, and for that reason were not subject to the lessor's privilege. Stearns also filed an answer to the demand of plaintiff against him. The case, as between Stearns and plaintiff, was disposed of by this court in December, 1923. See Henry Rose Mercantile & Manufacturing Co. v. Stearns, 154 La. 946, 98 So. 429. The intervention was tried, and judgment was rendered, recognizing, in effect, intervener to be the owner of the property claimed by it and provisionally seized, but decreeing the property to be subject to the lessor's privilege asserted by plaintiff, and ordering the property sold, to satisfy the claim of that company, for rent. The appeal on the intervention is now before us.

[1] There is no serious dispute as to the ownership of the goods, claimed by intervener and seized in this case. They belong to intervener. The real question is whether the goods are subject to the lessor's privilege asserted against them, and if so, to what extent.

Article 2705 of the Civil Code provides, in part, that:

"The lessor has, for the payment of his rent, and other obligations of the lease, a right of pledge on the movable effects of the lessee, which are found on the property leased. * * *"

Article 2706 of the Code provides, in part, that:

"This right of pledge includes, not only the effects of the principal lessee or tenant, but those of the undertenant, so far as the latter is indebted to the principal lessee, at the time when the proprietor chooses to exercise his right. * * * *"

Article 2707 provides that:

"This right of pledge affects, not only the movables of the lessee and underlessee, but also those belonging to third persons, when their goods are contained in the house or store, by their own consent, express or. implied."

And article 2708 provides that:

"Movables are not subject to this right, when they are only transiently or accidentally in the house, store, or shop, such as the baggage of a traveler in an inn, merchandise sent to a workman to be made up or repaired, and effects lodged in the store of an auctioneer to be sold."

Intervener's main contention is that the goods claimed by it are not subject to the lessor's privilege asserted against them, for the reason that, within the meaning of article 2708 of the Civil Code, the last article quoted above, they were only transiently on the leased premises. In support of this contention, intervener cites the case of Rea v. Burt, 8 La. 509. In that case it was held that the lessor of a cotton press has no privilege or pledge, for the payment of his rent, on cotton sent to the press by third persons and transiently stored with the lessee, to be repressed. Intervener also cites in support of that contention, Coleman v. Fairbanks & Gilman, 28 La. Ann. 93. In that case it appears that Cavroc & Son, the interveners therein, sent raw material to be manufactured in the sugar refinery of defendants, agreeing to pay defendants, as compensation, a certain percentage of the profits to be derived from the sale of the manufactured products. These products, and possibly some of the raw material, were seized by the plaintiff in the case for rent due by the defendant therein. The court held

that the lessor's privilege did not attach to either the manufactured product or to the raw material.

In both of the foregoing cases the court rests its ruling on the fact that the property of the third persons, seized for rent, was on the leased premises at the time of the seizure, because sent there (to use the language of the Code) to a workman "to be made up or repaired." The fact that the goods in those cases were so sent while those in the present case were not so sent, and the fact that those cases turned upon that fact, make them so unlike the present case as to render them of but little or no value in deciding this controversy. All that was decided in them was that raw material or other property sent to a workman to be made up or repaired, as expressly provided by article 2708 of the Code, is not subject to the lessor's claim, while on the leased premises and, in the last case, that the fact that the material, when made up, was to be sold from the premises, did not alter the case.

In our opinion this case is governed by the case of Goodrich v. Bodley, 35 La. Ann. 525. The facts in that case are very similar to those in the present one. It was held, to quote the syllabus, which correctly states the ruling of the court, that:

"The goods of a third person found in a leased store, where they had been consigned by their owner to the lessee, to be sold by the latter at a price fixed by the owner, with the understanding and agreement that the lessee or consignee could keep, as his compensation, all that he could obtain above the inventoried prices, and that no rent or storage was due by the owner, will be affected by the lessor's privilege, and are liable to the latter's seizure for unpaid rent due by the lessor."

And in the body of the opinion, the court, after deciding that, under the facts of the case stated, it was clear that the intervener could not be considered an undertenant, within the meaning of article 2706 of the Civil Code, quoted above, said:

"It is equally clear that the goods were not transiently or accidentally in the store, as the evidence shows that they were to remain there until sold at the invoice prices, and hence the provisions of article 2708 of our Civil Code cannot be successfully invoked by intervener."

The only difference between the facts in the foregoing case and those in the case at bar, in so far as we are able to perceive, is that the intervener in the case cited apparently did not reserve the right to sell at will from the goods placed by him in the hands of the defendant, and kept in the leased premises, whereas, in the case at bar, the intervener expressly reserved that right. However, the reservation of that right has no important bearing on the case; the question being whether the goods were transiently in the leased premises, and, in determining that question, it is a matter of no importance whether intervener or defendant, or both, had the right to sell the goods.

In the case at bar the evidence shows that the goods were placed in defendant's place of business with the consent of intervener, to be there sold and to remain there until sold, and hence, as said in the Goodrich Case, from which we have quoted, the provisions of article 2708 of the Civil Code cannot be invoked by intervener, for the goods were not transiently in the premises within the intendment of that article.

[2, 3] Intervener also urges that, in the event we hold that the goods were not on the leased premises transiently, then we should hold that the case is governed by article 2706 of the Civil Code, quoted above, which limits the lessor's right or pledge to the amount that the undertenant is indebted to the lessee at the time the lessor exercises his right against the lessee. In this connection it may be said that the word "undertenant," as used in article 2706 of the Civil Code, is not used in its broad sense, but is synonymous with the word "underlessee." University Publishing Co. v. Piffet, 34 La. Ann. 602. It may be

also observed, in the same connection, that one who pays storage for the safe-keeping of his goods in a warehouse, or other place, is regarded as a sublessee within the meaning of the same article of the Code. Vairin & Co. v. Hunt, 18 La. 498. In the University Publishing Co. Case, supra, quoting the syllabus, which correctly states the finding and decision of the court, it was held that:

"The goods of a third person contained in the leased house by his consent, under an agreement with the lessee that no rent or other consideration was to be paid for the occupancy, are not the goods of an 'undertenant,' and are affected by the landlord's pledge."

In the case at bar there was no agreement by intervener to pay defendant anything for the occupancy of the premises and no agreement to pay storage. To the contrary, the contract clearly contemplated that no rent or storage should be paid by intervener. Intervener, however, takes the position that the profits, which defendant was supposed to make from the sale of the goods, stand in lieu of a storage charge, and have the effect of making the contract one of storage or sublease. It may be said, however, that this position is untenable. The hope of making these profits cannot be said to constitute, or be the equivalent of, a price or consideration for storage, or for a sublease, nor was it intended that the hope, or even the profits, should be. The real object of the contract was not to provide for storage, but for the sale of the goods. See University Publishing Co. v. Piffet, supra, and Goodrich v. Bodley, supra.

[4] Intervener also relies on article 3260 of the Civil Code. That article of the Code gives, by necessary implication, to one who deposits movables in the hands of a lessee, a preference on the things deposited and found in the leased premises, superior to that of the lessor, provided it be proved that the lessor knew that the things deposited did not belong to his tenant. Intervener contends that it deposited the goods in the hands of

defendant, within the meaning of that article, and that plaintiff knew that the goods did not belong to his tenant. While intervener alleged no such claim in its intervention, yet we may say that, in our view, the article cannot be successfully invoked by intervener. This is so, because there was no deposit made within the meaning of the article. The deposit, referred to by the article, is that defined by law as being an act by which a person receives the property of another, binding himself to preserve it and return it in kind. Civil Code, art. 2926. In this instance, it was not the intention that the property, placed in defendant's hands, should be preserved by defendant and returned to intervener. The intention was that it should be sold, and it was placed in defendant's hands for that purpose.

[5] For the foregoing reasons our conclusion is that the property in question is subject to the lessor's privilege, under article 2707 of the Civil Code, quoted above; it being the property of a third person, placed in the leased premises with the consent of such person, and coming within none of the exceptions provided by law.

[6] Intervener urges, however, that, if we hold that the property is liable for the rent, we should hold it liable for only so much of it as had accrued when plaintiff ran its seizure, and not for rent that accrued thereafter, and hence that we should amend the judgment accordingly. Assuming that intervener would be entitled to such an amendment if the circumstances required it, still, in this case, they do not require that the amendment be made. This is so, because the judgment against intervener merely decrees its property, found in the leased premises, to be subject to plaintiff's claim for rent, and orders that the property be seized and sold to satisfy that claim, without fixing the amount of the claim. In plaintiff's case against defendant, when the case was before us, we amended the judgment against defendant by reducing the rent, for reasons there stated, to the amount that had accrued when the seizure was run. 154 La. 946, 98 So. 429. Hence plaintiff's claim, for which intervener's property has been held liable, is only for the rent that had accrued up to the time of the seizure. Therefore intervener already has, in effect, that which it is now asking us to grant, and no amendment is necessary.

For these reasons the judgment appealed from is affirmed, appellant to pay the costs.

LAND, J., recused.