## No. 9281

### Orleans

### SANCHEZ v. HERZFELD

(June 7, 1926. Opinion and Decree.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Landlord and Tenant —Par. 108.**

Goods delivered on consignment by the owner to the lessee of a store to be sold by him become subject to the lessor's privilege for rent.

Appeal from Civil District Court. Hon. Porter Parker, Judge.

Action by A. Sanchez against David Herzfeld.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Henry J. Rhodes, of New Orleans, attorney for plaintiff, appellant.

Weiss, Yarrut, Stich & J. A. Morales, of New Orleans, attorneys for defendant, appellee.

CLAIBORNE, J. The question in this case is whether the movable property of a third person contained in leased premises is subject to the lessor's privilege.

The plaintiff alleged that on November 1, 1922, he leased to defendant the lower portion of 1427 Orleans street for twenty-three months commencing on November 1, 1922, and ending on September 30, 1924, for the price of $18.00 per month; that the lessee failed to pay the rent for January, 1923; that this caused the maturity of all the other notes. He prayed for provisional seizure and for judgment for $378.00 with interest and costs.

The writ issued and the contents of the leased premises were seized.

J. Rabinowitz filed a third opposition and claimed to be owner, free from the lessor's privilege, of all the property seized; he alleged that he had consigned on memorandum to the defendant herein all of said property which was to be accounted for to him as sold by the defendant and were subject to recall at will; that said property was transiently on the leased premises and was not subject to the lessor's privilege; that the proceedings in this case are collusive. He prayed that the property seized be decreed to be his property and be delivered to him free of plaintiff's privilege.

In answer to the third opposition the **defendant, Herzfeld, denied that the third** opponent consigned to him the property seized, but alleged on the contrary that the property was delivered on various dates "under an outright sale" and was charged by third opponent against the open account of the defendant, who, in turn, gave third

opponent credit therefor to the extent of $618.76. He prayed for the dismissal of the third opposition.

The plaintiff denied all the allegations of the petition of third opponent.

There was judgment in favor of the third opponent recognizing him as the owner of the property seized, free from plaintiff's privilege and releasing the seizure.

The plaintiff has appealed.

The argument is that the third opponent, Rabinowitz, did not sell the things to the defendant but that he consigned them to him. Yet on the first page of his examination as a witness under the act he answers:

"Q. How much of these things did you sell to Mr. Herzfeld?
"A. Practically the line consists of that.
"Q. How is that?
"A. He bought practically the whole amount, the underwear, hosiery and dresses.

Mr. Weiss (his lawyer): "He didn't understand."

And then the witness proceeds:

"A. He didn't purchase any of it, we consigned it to him.
"Q. What do you mean by consign?
"A. We simply consigned the stuff subject to our call.
"Q. You mean you consigned these goods and he was to sell them and pay you as he would sell them?
"A. Yes, sir.
"Q. And at any time, if you wanted to recall these things, you could recall them?
"A. Yes, sir.
"Q. Is that the way in which you generally make your sales?
"A. No, sir."

In other parts of his testimony this opponent uses the words, sold, sale, buy, bought.

Then the third opponent proceeded to state that "the ledger page showing the account between the intervenor and Davis Herzfeld" had the words: "Subject to our call, consignment." He did not write that himself; he instructed his bookkeeper to write it; he did not see him write it; he is no longer in his employ; he was not produced as a witness. He never had occasion to recall any of these sales to defendant; he has one or two other accounts like that one; he does not remember the names.

The original ledger sheet, a detachable sheet, is offered in evidence. The words, "subject to our call, consignment", are written in red ink, and apparently in a different hand from the rest in black ink.

Below are conspicuous erasures. Then follow:

"Name:  David Herzfeld.
"Address:  334 Baronne.
"Residence:  2326 Magazine St.
"Store:  1427 Orleans.

| "1922 Items. | | Debits. |
|---|---|---|
| Aug. 14th R. 15 | | 26.05 |
| "  19 "  " 21 | | 33.20 |
| "  21 "  " 22 | | 37.50 |
| "  23 "  " 24 | | 43.00 |
| "  28 "  " 29 | | 20.00 |
| "  29 "  " 30 | | 22.50 |
| | | $182.25 |

Continuing until the sum of the items makes up $2419.88 and upon the same ledger page are the following:

| 1922. | Items. | Credits. |
|---|---|---|
| August 21 | | 23.05 |
| "  19 | | 3.00 |
| "  22 | | 3.20 |
| "  23 | | 43.00 |
| "  29 | | 42.50 |
| | | $182.25 |

Continuing until the amount of credits reached $1801.12; leaving the balance claimed of $618.76.

The first item of merchandise was sold or delivered to defendant in August, 1922; this suit was filed in January, 1923. The different part payments made appear to be on a running account. There is nothing to show that the items of merchandise delivered to defendant in August were accounted for. If they had been received by defendant on consignment he would have been the opponent's mandatary or agent, and in that capacity he would have owed opponent regular returns. There is no evidence that defendant ever made any return to opponent. The accounts between them are the ordinary open accounts of vendor and vendee, debtor and creditor, and the account is debited with purchases and credited with payments.

There is nothing to show the terms and conditions, or the duration of this consignment.

The Century Dictionary thus defines the word "consign".

4. "In com., to transmit by carrier, in trust for sale or custody; usually implying agency in the consignee." Consignment: The act of sending or committing in trust for sale or custody, usually implying conveyance by a carrier and agency in the part of the recipient.

But it seems that the defendant left suddenly for Chicago owing to his brother's illness; he instructed his attorney-at-law and in fact, J. A. Morales, practicing lawyer at this bar, to convoke a meeting of his creditors, to decide upon the distribution of the property he was leaving behind. This meeting was held at the office of Mr. Morales; the opponent, Rabinowitz, was present. Mr. Morales testified that he asked opponent if his account was correct, $618.00; "that the list furnished me by Mr. Herzfeld showed a balance due in their favor on his open account of

six hundred and eighteen dollars and some cents and he then looked up the list he had with him and he said that was correct, and I said if the amount was still due him and he said yes. At that time he didn't make any mention of having sent that there on consignment or memorandum or through any special manner by which it was held for him there. In fact, he didn't make any mention of that at all." There was some talk at that meeting of putting the defendant in bankruptcy, but the opponent and others said they would not care to go into any expense as what was there would not justify it.

The opponent testified that he went to the meeting with Mr. Welsh.

Asked whether, at that meeting, he said that the goods had been sent there by him on consignment, he answered:

"I didn't say anything at all. They just stood around there talking. There was about twenty-five or thirty creditors in Morales' office, and they were talking one thing and another."

We do not think opponent has established a case of consignment. But if he has, the C. C. Art. 2707 provides that:

"This right of pledge affects not only the movables of the lessee and underlessee, but also those belonging to third persons, when their goods are contained in the house or store by their own consent, express or implied."

The exception to this general rule is contained in Art. 2708 C. C. in these words:

"Movables are not subject to this right, when they are only transiently or accidentally in the house, store or shop, such as the baggage of a traveler in an inn, merchandise sent to a workman to be made up or repaired, and effects lodged in the store of an auctioneer to be sold."

The burden of proof is upon the opponent to show that he comes within the exception. We do not think he has done so. His goods were delivered to the defendant in August and they were seized in the leased premises in January, five months thereafter. It cannot be said that they were there "accidentally or transiently". It seems to us that this case comes squarely within the rule laid down in Goodrich vs. Bodley, 35 A. 525, in which the court said:

"The goods of a third person found in a leased store, where they had been consigned by their owner to the lessee, to be sold by the latter at a price fixed by the owner, with the understanding and agreement that the lessee or consignee could keep as his compensation all that he could obtain above the inventoried prices, and that no rent or storage was due by the owner, will be affected by the lessor's privilege and are liable to the latter's seizure for unpaid rent due by the lessee."

Twitty vs. Clarke, 14 La. Ann. 503.

Hynson vs. Cordukes, 21 La. Ann. 553.

Johnson vs. Tacneau, 23 La. Ann. 453.

Deslix vs. Jonc, 6 Rob. 292.

Bailey vs. Quick, 28 La. Ann. 432.

7 Orl. App. 287.

And in Louque vs. Baptist, 157 La. 124, 102 South. 91, the court said:

"Goods placed by an owner who is not an undertenant, in leased store of general dealer therein for sale at fixed price for owner's account, are not transiently in dealer's premises within Rev. C. C. 2708, and hence are subject to lessor's pledge."

It is therefore ordered that the judgment herein be reversed and set aside, and it is now ordered that there be judgment in favor of the plaintiff. Anastasie Sanchez, rejecting the demand of intervenor and third opponent, Jacob Rabinowitz, at his cost in both courts.